IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

F I L E D

JAN - 4 2011

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

CENTRAL TELEPHONE CO.
OF VIRGINIA, et al.,

     Plaintiffs,

v.

Civil No. 3:09cv720

SPRINT COMMUNICATIONS CO.
OF VIRGINIA, INC., et al.,

     Defendants.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION AND FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES, OR, ALTERNATIVELY, TO STAY THIS CASE UNDER THE DOCTRINE OF PRIMARY JURISDICTION (Docket No. 9); the MOTION FOR LEAVE TO SUPPLEMENT THE APPENDIX TO CENTURYLINK'S OPPOSITION TO SPRINT'S MOTION TO DISMISS OR STAY (Docket No. 20); and CENTURYLINK'S OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION (Docket No. 43). For the reasons set forth below, DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION AND FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES, OR, ALTERNATIVELY, TO STAY THIS CASE UNDER THE DOCTRINE OF PRIMARY JURISDICTION (Docket No. 9) is denied; the MOTION FOR LEAVE TO SUPPLEMENT THE APPENDIX TO CENTURYLINK'S OPPOSITION TO SPRINT'S MOTION TO DISMISS OR STAY (Docket No. 20) is denied; and

CENTURYLINK'S OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION (Docket No. 43) are sustained.

**BACKGROUND**

This action involves a contract dispute over fees that the Defendant telecommunications carriers ("Sprint") have agreed to pay the Plaintiff carriers ("CenturyLink") for use of CenturyLink's local telephone network facilities pursuant to eighteen interconnection agreements ("ICAs"). The ICAs at issue were entered into pursuant to the provisions of the Telecommunications Act of 1996, Pub. L. No. 104-404, 110 Stat. 56 (codified in sections of 47 U.S.C.).

## I.    The Telecommunications Act of 1996

The Telecommunications Act of 1996 (the "Act") was enacted to open previously monopolistic local telephone markets to competition. The Act requires all incumbent local exchange carriers ("ILECs"), such as CenturyLink, to interconnect their networks with those of competing local exchange carriers ("CLECs"), such as Sprint. See 47 U.S.C. § 251(c)(2). Interconnection allows a customer of one carrier to call a customer from another carrier. When this occurs, the carrier whose customer initiated the call must compensate the receiving carrier for transporting and terminating the call through its network.

The Act also requires ILECs and CLECs to negotiate ICAs to establish the terms by which they will compensate one another for use of each other's networks. Id. § 251(b), (c)(1). All ICAs must be approved by a state regulatory commission before they become effective. Id. § 252(e).

## II. The Breach of Contract Claim

Between 2004 and 2006, CenturyLink and Sprint entered into eighteen ICAs pursuant to the requirements of the Act. The ICAs covered access charges for Sprint's use of CenturyLink's local telephone network facilities. (Compl. ¶ 3.) In each of the ICAs, the specified per minute charges for use of CenturyLink's local telephone network facilities depend on the origin of the call, as either in-state or out-of-state, and the nature of the call, as either local or long distance. (Id. ¶¶ 3-4.) For long distance interstate calls, the charges are based on tariffs that have been filed and approved by the Federal Communications Commission (the "FCC"). (Id. ¶ 4.) Charges for long distance intrastate calls, on the other hand, are based on tariffs that have been filed with the applicable state commission. (Id.) Under the terms of the ICAs, the specified charges apply whether the call uses a transmission format known as Voice-over Internet Protocol ("VoIP") or a format known as Time Division Multiplexing. (Id. ¶ 5.)

At the time the ICAs were negotiated, drafted, and signed, Sprint and CenturyLink were sister companies and wholly owned subsidiaries of Sprint Nextel Corporation. (Id. ¶ 6.) Subsequently, in 2006, the CenturyLink companies were spun off and bought by Embarq Corporation which later became CenturyLink.

The appropriate state commissions approved all the ICAs. (Id. ¶ 31.) Following the effective date of each ICA, CenturyLink billed Sprint for use of CenturyLink's local telephone network facilities; and, until June 2009, Sprint paid as agreed under the terms of the ICAs. (Id. ¶ 6.)

In June 2009, Sprint altered course and, for the first time since the effective date of any of the ICAs, lodged with CenturyLink a series of disputes over VoIP-originated traffic contending that the ICAs did not make Sprint liable to pay the charges for such traffic.[1] (Id. ¶ 8.) Additionally, Sprint disputed amounts previously paid, spanning the prior two years. (Id.) Specifically, Sprint sought to reduce its payment obligations for VoIP-originated traffic by ninety-six percent retroactive to May 2007. (Id. ¶ 10.)

In this action, Sprint filed a motion to dismiss for lack of jurisdiction and failure to exhaust administrative remedies,

---

[1] At oral argument, CenturyLink presented evidence that Sprint's abrupt change in position regarding charges for VoIP-originated traffic resulted from Sprint's cost-cutting efforts, not from a bona fide contract dispute.

4

or, in the alternative, to stay the case under the doctrine of primary jurisdiction. CenturyLink filed a motion for leave to file a supplemental appendix to CenturyLink's opposition to Sprint's motion. The Magistrate Judge submitted a Report and Recommendation counseling that Sprint's motion should be granted and CenturyLink's motion denied. CenturyLink filed objections to the Magistrate's Report and Recommendation. The motions and objections have been briefed and argued fully and are ripe for decision.

## DISCUSSION

## I. Standard of Review of Magistrate's Report and Recommendation

Under 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(3), the Court must undertake *de novo* review of any portions of the Magistrate's Report to which there is an objection. "[A]s part of its obligation to determine *de novo* any issue to which proper objection is made, a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate." United States v. George, 971 F.2d 1113, 1118 (4th Cir. 1992).

II. Dismissal Under Rule 12(b)(1)

A. Subject Matter Jurisdiction Under 28 U.S.C. § 1331

The first issue is whether the Court has subject matter jurisdiction over a claim for breach of an ICA. CenturyLink asserts jurisdiction under 28 U.S.C. § 1331 or, alternatively, under 47 U.S.C. § 207.

The analysis must proceed mindful of the principle that federal courts are "courts of limited jurisdiction" and thus "are empowered to act only in those specific situations authorized by Congress." Bowman v. White, 388 F.2d 756, 760 (4th Cir. 1968). Thus, a "court is to presume . . . that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." United States v. Poole, 531 F.3d 263, 274 (4th Cir. 2008). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). However, it also is the rule that, when jurisdiction is proper, courts have a "virtually unflagging obligation" to exercise that jurisdiction. Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).

Under § 1331, district courts have jurisdiction in all "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Supreme Court has recognized federal jurisdiction under § 1331 when "federal law

creates the cause of action." Verizon Md., Inc. v. Global NAPS, Inc., 377 F.3d 355, 362 (4th Cir. 2004) [hereinafter "Verizon Md. II"] (citing Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986)). Thus, the dispositive question is whether this breach of contract action is a civil action arising under the laws of the United States, which, in turn, is determined by whether federal law created the cause of action here asserted.

In Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 642 (2002), the Supreme Court of the United States held that there was "no doubt that federal courts have jurisdiction under § 1331 to entertain" a claim that a state commission's order regarding compensation due under an ICA violated the Act and FCC regulations. On remand, in Verizon Md. II, the Fourth Circuit outlined the appropriate jurisdictional analysis when considering whether a district court has jurisdiction under § 1331 respecting disputes over an ICA provision. 377 F.3d at 357. In all cases, said the Fourth Circuit, "the question of whether a claim arises under federal law begins with a look at the face of the plaintiff's properly pleaded complaint." Id. at 363 (internal quotation marks omitted). In Verizon Md. II, the complaint cited the Act as well as FCC regulations, as did the ICAs which were attached to the complaint. Id. at 363-64.

The Fourth Circuit then considered the nature and purpose of the ICA and whether it was a creature of federal law. Id. at

364. The Court of Appeals concluded that an ICA is a "creation of federal law" because it is the tool through which the Act is implemented and enforced. Id. (citing BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., Inc., 317 F.3d 1270, 1278 (11th Cir. 2003)). The Court of Appeals elaborated that "[t]he Act requires an [ILEC] and its aspiring competitor to enter into an [ICA] that sets forth the 'terms and conditions . . . to fulfill the duties' mandated by § 251(b) and § 251(c) of the Act." Verizon Md. II, 377 F.3d at 364 (citing § 251(c)(1)). Our circuit court went on to explain that ICAs "are thus the vehicles chosen by Congress to implement the duties imposed in § 251. They are, in short, federally mandated agreements and '[t]o the extent [an ICA] imposes a duty consistent with the Act . . . that duty is a federal requirement.'" Verizon Md. II, 377 F.3d at 364 (quoting Int'l Ass'n of Machinists v. Cent. Airlines, Inc., 372 U.S. 682, 695 (1963)).

Noting that establishing reciprocal compensation for the transport and termination of calls was a duty under § 251(b), the Court of Appeals concluded that the "heart" of the contract claim on reciprocal compensation under the ICA was dependent on "the interpretation and application of federal law," and thus arose under federal law. Verizon Md. II, 377 F.3d at 364-66. The presence of a substantial federal question, in turn, meant

that federal district courts had jurisdiction under § 1331. Id. at 366. For this Court, the controlling legacy of Verizon Md. II is clear: federal district courts have jurisdiction under § 1331 to decide contract disputes respecting the interpretation of ICAs.[2]

The holding in Verizon Md. II governs this action. Looking first at the pleadings, CenturyLink's Complaint cites provisions of the Act, thusly mirroring the plaintiff's complaint in Verizon Md. II. Moreover, the complaint calls upon this Court, like the Verizon Md. II court, to interpret and to enforce the provisions of an ICA, a creation of federal law and a federally mandated agreement that imposes federal duties. In such cases, Verizon Md. II teaches that federal districts courts have jurisdiction under § 1331 to interpret and to enforce an ICA, at least insofar as it speaks to a duty imposed by federal law. See Verizon Md. II, 377 F.3d at 366. With Verizon Md. II. leaving virtually no doubt that reciprocal compensation is such a federally mandated duty, see id. at 365 ("One duty mandated by § 251(b) [is] the duty [of local carriers] to establish reciprocal compensation arrangements for the transport and

---

[2] The Verizon Md. II court was careful to say that not "every dispute about a term in an [ICA] belongs in federal court." 377 F.3d at 366. It clarified, "[w]hen the contractual dispute . . . involves one of the 1996 Act's essential duties, there is a federal question," subject to resolution in federal court. Id. Without doubt, the requirement to enter into ICAs is one of the Act's essential duties.

termination of calls." (internal quotation marks omitted)), Verizon Md. II necessitates a decision that the Court has federal question jurisdiction over CenturyLink's claims for breach of the ICAs at issue.

A federal court retains its jurisdiction under § 1331 unless a statute specifically vests jurisdiction in another entity. Sprint argues that § 252(e)(6) of the Act vests jurisdiction to resolve disputes over the ICAs in state commissions in the first instance, and, in consequence, divests federal district courts of jurisdiction unless a state commission has first decided the dispute.

Section 252(e)(1) vests in state commissions authority to approve or reject ICAs when they are first entered into by the parties, either through negotiations or by way of an arbitration procedure set by the Act. Section 252(e)(1) does not address jurisdiction over post-formation ICA disputes.

Section 252(e)(6) provides for federal district court review of any decisions made by the state commission respecting whether an agreement meets the requirements of § 251 or § 252. However, § 252(e)(6) does not by its terms divest federal courts of their § 1331 federal question jurisdiction over ICA disputes.

In Verizon Md., the Supreme Court considered whether § 252(e)(6) strips a federal court of general jurisdiction under § 1331 to review a state commission's determination. The

Supreme Court held that it did not, explaining that no provisions of the Act "evince any intent to preclude federal review of a commission determination.

If anything, the Act reinforces the conclusion that § 252(e)(6)'s silence on the subject leaves the jurisdictional grant of § 1331 untouched. "For where otherwise applicable jurisdiction was meant to be excluded, it was excluded expressly." Verizon Md., 535 U.S. at 644. This rationale is applicable here with equal force and effect. See ICG Telecom Group, Inc. v. Qwest Corp., 375 F. Supp.2d 1084, 1088 (D. Col. 2005) (applying the rationale of Verizon Md. to the precise question at issue here and stating that "[o]n the most sensible reading of the Verizon Maryland decision, divestiture of federal-question jurisdiction is accomplished in the [Act] only explicitly").

Not a single provision of the Act demonstrates that Congress intended to preclude federal jurisdiction over the interpretation and enforcement of an ICA. See S. New England Tel. Co. v. Global NAPs, Inc., 520 F. Supp.2d 351, 354 (D. Conn. 2007) ("[T]here is no language in [the Act] that expressly proscribes a district court from hearing a dispute concerning an ICA."). Absent discernible congressional intent to the contrary, the grant of jurisdiction bestowed upon federal courts under § 1331 remains intact to resolve the dispute over the

interpretation of this federally created, indeed federally mandated, contract.

In arguing that the Court lacks subject matter jurisdiction to hear a claim for breach of an ICA, Sprint relies primarily on Core Commc'ns Inc. v. Verizon Pa., Inc., 493 F.3d 333 (3d. Cir. 2007), and its interpretation of the FCC's decision in In the Matter of Starpower Commc'ns, LLC, 15 F.C.C.R. 11277 (F.C.C. 2007). But, Sprint concedes, as it must, that the decision in Core was not based on subject matter jurisdiction grounds. Rather, in Core, the Third Circuit left untouched the district court's determination that it had federal question jurisdiction under § 1331. 493 F.3d at 337. Thus, Core and Starpower are more appropriately considered under the doctrine of exhaustion of administrative remedies.

Sprint also cites Pac. Bell Tel. Co. v. Global NAPS Cal., Inc., CV 05-7734 (C.D. Cal. Oct. 4, 2007), in which the district court held that it lacked jurisdiction over the plaintiff's breach of contract claims because they had not yet been brought before a state commission. CV 05-7734 at 5. However, in arriving at this holding, the court relied primarily on the Core holding, which, as stated, did not address subject matter jurisdiction.

Outside the realm of Core, Sprint cites four other decisions in support of its proposition that the Court lacks

subject matter jurisdiction. First, in Budget Prepay, Inc. v. AT&T Corp., 605 F.3d 273 (May 3, 2010), the Fifth Circuit found that federal courts do not have jurisdiction under § 1331 for claims for breach of an ICA. In Budget Prepay, the plaintiff first brought suit in federal court, seeking a declaratory judgment on the defendant's promotion payment scheme. 607 F.3d at 277. The Fifth Circuit held that the claim did not arise under federal law. Id. at 281. In so holding, the Fifth Circuit noted that the claim did not identify any federal statute or regulation from which it arose. Id. at 279. Furthermore, the court relied on its holding in Sw. Bell Tel. Co. v. Pub. Util. Comm'n of Texas, 208 F.3d 475 (5th Cir. 2000), that a claim requiring interpretation of an ICA, albeit intertwined with federal law, was a claim "governed by and arising under state law." Id. (citing Sw. Bell, 208 F.3d at 484-85). The Budget Prepay court then concluded that the "invocation of federal law in an ICA does not turn a contract dispute into a federal question case; rather, it accepts the relevant statutory language or regulation as a binding contract provision in lieu of a privately negotiated provision." 605 F.3d at 279. The Fifth Circuit distinguished the Supreme Court's holding in Verizon Md. by stating that the "claim in that case did not arise, as it does here, from an ICA;" instead, said the Fifth Circuit, Verizon Md. was a "suit challenging a

commission's interpretation of federal regulations." Id. at 280. Second, in Contact Commc'ns v. Qwest Corp., 246 F.Supp.2d 1184, 1189 (D. Wyo. 2003), the district court found that federal courts had no jurisdiction over an ICA dispute absent a prior determination by a state commission. In Contact, the court confronted the different question of whether federal courts have diversity jurisdiction in the first instance over ICA disputes, accepting without scrutiny other courts' determinations that district courts lacked federal question jurisdiction on the same issue. 246 F.Supp.2d at 1188-89. Third, in AT&T Commc'ns of Ohio, Inc. v. Ohio Bell Tel. Co., 29 F.Supp.2d 855, 857 (S.D. Ohio 1998), the district court dismissed the plaintiff's claims for lack of jurisdiction because the claims had not been brought first before the state commission. That case was decided without the benefit of the Supreme Court's rationale in Verizon Md. Fourth, Sprint relies on the decision in Bell Atlantic-Virginia, Inc. v. Worldcom Techs. of Virginia, 70 F.Supp.2d 620, 623 (E.D. Va. 1999). The decision in Bell Atlantic-Virginia supports Sprint's argument. But, the case was decided before the Supreme Court decided Verizon Md. and before the Fourth Circuit decided Verizon Md. II. Thus, Bell Atlantic-Virginia cannot be any longer considered to provide the applicable rule respecting subject matter jurisdiction.

While those four decisions support Sprint's argument, they do not control here. Instead, the decisions in Verizon Md. and Verizon Md. II are controlling. Sprint would have this Court believe that, in finding federal jurisdiction under § 1331 in the first instance over substantive claims arising from ICAs, it sails against the prevailing current of judicial authority. Even if this characterization of the judicial landscape were correct (and it is not), the fact remains that, in this Court, two currents matter more than others—those flowing from the Supreme Court and the Fourth Circuit. In fact, they matter so much that they work to the exclusion of others. Not surprisingly, then, Verizon Md. and Verizon Md. II direct the Court's analysis, and, contrary to Sprint's position, they teach that, in this case, there is federal subject matter jurisdiction over post-formation ICA disputes. Because jurisdiction is proper under § 1331, it is unnecessary to decide whether jurisdiction is also proper under § 207.

B. Ripeness

Sprint also asserts that the action must be dismissed under Rule 12(b)(1) on ripeness grounds. Ripeness is a justiciability doctrine "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003). The rationale of the

doctrine is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effect felt in a concrete way by the challenging parties." Pac. Gas and Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 200 (1983).

Ripeness requires consideration of "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Texas v. United States, 523 U.S. 296, 300-01 (1998) (internal citations omitted). The burden of proving ripeness falls on the party bringing suit. Miller v. Brown, 462 F.3d 312, 319 (4th Cir. 2006).

Sprint asserts that CenturyLink's claims are not ripe because no party is "aggrieved" by a "state court determination" under § 252(e)(6) until a state commission has first decided the contract dispute. That argument conflates Sprint's exhaustion argument with its ripeness argument. On ripeness, the judicial inquiry is whether there is a "case or controversy" between the parties. And, it is clear beyond question that there is a fully developed dispute between the parties over particular provisions of ICAs to which they are parties, and not merely an abstract disagreement. Therefore, the matter is ripe for decision.

III. Failure to Exhaust Administrative Remedies

Sprint next invokes the doctrine of exhaustion of administrative remedies, contending that a state commission must first decide the disputes over breach of the ICAs before a federal court can entertain them. This argument is similar to Sprint's jurisdictional argument, but it turns not on the presence of jurisdiction, but on the timing of the exercise thereof.

The exhaustion doctrine "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." McCarthy v. Madigan, 503 U.S. 140, 145 (1992), superseded by statute on other grounds. Exhaustion applies "where a claim is cognizable in the first instance by an administrative agency alone." United States v. W. Pac. R.R. Co., 352 U.S. 59, 64 (1956). "Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." McCarthy, 503 U.S. at 144. However, that discretion is limited and must be exercised only to discern what the statutory text and the statutory scheme disclose about the matter of exhaustion. The courts do not possess the discretion to decide, as a policy matter, whether exhaustion would be a desirable requirement.

The statutory text on which Sprint relies is § 252(e)(6), entitled, Review of state commission actions, which, in pertinent part, provides that:

> In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

The text of § 252(e)(6) addresses a limited topic: federal court review of decisions made by state commissions in cases in which they have been called upon to make a decision. The text of the statute does not specify what cases can or must be directed to state commissions. Nor does § 252(e)(6), or any other section of the Act, confer, withhold, or give an order of priority to federal court jurisdiction as to post-formation disputes over the terms of an ICA. In other words, § 252(e)(6) simply does not address itself to the exhaustion issue. For that reason, courts should be wary of imposing an exhaustion requirement where, as here, Congress has chosen to permit federal review of a state commission decision, but has not seen fit to limit in any way federal jurisdiction. Indeed, to interpose by judicial fiat a requirement for a state commission decision to be a precursor to the exercise of otherwise extant

federal jurisdiction would be an act of judicial legislation, not an exercise in statutory interpretation.

Nothing in the Act explicitly requires exhaustion. And, while courts have looked, without success, to § 252(e)(6) to find an exhaustion requirement, it remains undisputed that the provision is silent as to whether a determination of post-formation ICA disputes must be made, in the first instance, by state commissions.

Sprint attempts to inject an exhaustion requirement into § 252(e)(6) by arguing that the result is called for under the deference required by Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), to the FCC's decision in In the Matter of Starpower Commc'ns, LLC, 15 F.C.C.R. 11277 (F.C.C. 2007). Under Chevron, when a court reviews an agency's construction of a statute that the agency administers the court must consider two questions:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise questions at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific

issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

457 U.S. at 842-43.

In Starpower, the FCC considered whether it could, with respect to a dispute over the interpretation and enforcement of an ICA, preempt the jurisdiction of a state commission pursuant to § 252(e)(5) of the Act. That section of the Act states:

> If a State commission fails to act to carry out its responsibility under this section in any proceeding or other matter under this section, then the Commission shall issue an order preempting the State commission's jurisdiction of that proceeding or matter within 90 days after being notified (or taking notice) of such failure, and shall assume the responsibility of the State commission under this section with respect to the proceeding or matter and act for the State commission.

47 U.S.C. § 252(e)(5). The parties, in Starpower, had called upon the state commission to interpret an ICA, but the state commission had declined to act.

In assessing whether it could preempt a state commission's jurisdiction under § 252(e)(5), the FCC first found it necessary to determine whether the power to interpret and enforce an ICA lay within the responsibility of the state commission when a party has asked the commission to interpret and enforce an ICA. Starpower, 15 F.C.C.R. at 11279. Relying on opinions from the

Fifth and Seventh Circuits, the FCC determined that the state commissions had such power. Id. at 11279.

The FCC first relied upon Ill. Bell Tel. Co. v. WorldCom Techs., Inc., 179 F.3d 566 (7th Cir. 1999). There, a dispute arose over interpretation and enforcement of an ICA. Ill. Bell, 179 F.3d at 569. The carriers filed complaints with the state commission that earlier had approved the ICAs. Id. The state commission made a ruling and the losing party sought review in federal district court, adding the commissioners of the state commission as defendants. Id. The district court upheld the state commission's determination regarding interpretation of the ICA and denied a motion to dismiss by the commissioners. Id. Upon appeal to the Seventh Circuit on both the ICA dispute and motion to dismiss, the commissioners asserted that the federal court had a limited power of review under the Act which did not extend to the issue at hand. Id. at 570. The Seventh Circuit reaffirmed its earlier holding that "[d]ecisions of state agencies implementing the 1996 Act are reviewable in federal district courts," including disputes about ICA terms. Id. (citing Ill. Bell Tel. Co. v. WorldCom Techs., Inc., 157 F.3d 500, 501 (7th Cir. 1998)). The decision does not address the exhaustion doctrine at all.

The FCC, in Starpower, also relied on Sw. Bell, 208 F.3d 475 (5th Cir. 2000), wherein the parties brought a dispute over

breach of an ICA to the state commission. 208 F.3d at 478. The issue was then brought to the district court to review the commission's determination, which the district court upheld. Id. The decision was appealed to the Fifth Circuit, which, before considering the merits of the appeal, assessed jurisdiction over the dispute. Id. at 479. The Fifth Circuit first held that the Act's grant to state commissions "of plenary authority to approve or disapprove [ICAs] necessarily carries with it the authority to interpret and enforce the provisions of agreements that state commissions have approved." Id. at 479-80. The Fifth Circuit further held that the district court had the power to review the interpretation and enforcement decisions of a state commission. Id. at 480. Like Ill. Bell, this decision does not address the exhaustion doctrine.

The FCC then observed that "[t]hese court opinions implicitly recognize that, due to its role in the approval process, a state commission is well-suited to address disputes arising from interconnection agreements." Id. at 11280. Having concluded that the state commission could so act, but had not done so, the FCC held that it could assume the jurisdiction from the state commission because it had failed to interpret and enforce the ICA. Id. at 11278.

When read appropriately, Starpower stands for the proposition that it is within the responsibility of the state

commissions to interpret and enforce ICAs if asked to do so.[3]  To claim that Starpower stands for more belies the fact that it does not base its decision on the exhaustion doctrine, much less even address that doctrine.

Nonetheless, the Third Circuit in Core, 493 F.3d 333, used the FCC's limited decision in Starpower as the predicate for a much more far-reaching decision:  that a district court could hear a dispute concerning breach of an ICA only if the dispute first had been decided by a state commission, thereby reading an exhaustion requirement into the statute.  Analyzing the issue under Chevron, the court in Core first acknowledged that the Act is "simply silent as to the procedure for post-formation disputes."  Id. at 340.  The court then went on to consider the FCC's decision in Starpower.  It explicitly noted that "under the narrowest interpretation, Starpower stands for the proposition that state commissions have, at a minimum, the non-exclusive authority to hear post-formation disputes involving approved [ICAs], despite the Act's silence on the issue."  Id. at 342.

But, the Third Circuit went much further to express its view that, given the FCC's language in Starpower and the

---

[3] Notably, all courts to consider the issue have joined in that conclusion.  See, e.g., BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., Inc., 317 F.3d 1270, 1276 (11th Cir. 2003).

structure of the statutory scheme as a whole, state commissions alone have the power to decide post-formation disputes in the first instance, with federal court jurisdiction limited only to appellate review. Id. at 342-43. In so doing, the court, relying on an ipse dixit, simply rewrote the statute to achieve what it thought was a desirable policy result. That policy decision purports to be based on Chevron deference to the FCC, notwithstanding the acknowledgment that the FCC's Starpower decision simply had not interpreted the statute in the extended fashion taken by the court. That course is flatly at odds with the basic principle of Chevron, which requires deference to what the agency says, not to what the court thought the agency should have said.

Sprint also relies on BellSouth, 317 F.3d 1270, 1277 (11th Cir. 2003), wherein the Eleventh Circuit observed that state commissions have power in the first instance to interpret and enforce ICAs.[4] Like Core, the BellSouth court relied largely on the FCC's decision in Starpower, and to that extent, it suffers

---

[4] The procedural posture of BellSouth is different from this action. There, the parties brought a claim for breach of an ICA before the state commission, and the commission's decision was affirmed by the district court. BellSouth, 317 F.3d at 1273. On appeal to the Eleventh Circuit, a split panel did not reach the merits of the appeal, instead "reversing the district court's order on the grounds that there was no statutory authority for the [state commission] to interpret and enforce [ICAs] in the first instance." Id. A petition for rehearing en banc was filed and granted. Id.

from the same analytical infirmities as Core. Moreover, in BellSouth, the parties actually had brought the dispute to the state commission. Hence, BellSouth's misplaced reliance on Core aside, it is not applicable here.

Sprint next cites Ohio Bell Tel. Co., Inc. v. Global NAPS Ohio, Inc., 540 F. Supp.2d 914 (S.D. Ohio 2008), wherein the district court considered whether remedies with the state commission must be exhausted before a claim for breach of an ICA is brought in federal court. 540 F. Supp.2d at 918. In holding that exhaustion was required, the district court relied on the flawed reasoning of Core.

Using the Chevron analysis, as the Core and Ohio Bell courts did, is of little help in assessing the exhaustion issue. That issue, for one, is not resolved—nor, for that matter, even addressed—by the Act's language. The Act merely provides:

> (1) Any interconnection agreement adopted by negotiation or arbitration shall be submitted for approval to the State commission. A State commission to which an agreement is submitted shall approve or reject the agreement, with written findings as to any deficiencies.
>
> . . . .
>
> (6) In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or state meets the

> requirements of section 251 of this title
> and this section.

47 U.S.C. § 252(e). Nowhere, as the Core court noted, do these provisions speak to jurisdiction over the interpretation and enforcement of an ICA. They, instead, speak only to ICA formation; and are silent as to post-formation disputes. Those provisions then cannot be found to reflect a clearly stated Congressional intent that state commissions must decide in the first instance post-formation ICA disputes.

Chevron's second step asks whether an agency interpretation has answered the precise question at issue, and, if so, whether that interpretation is a permissible one. As explained previously, Starpower did not even address the precise question at issue. Chevron deference is not allowed for that reason alone.

The Third Circuit's analysis further erred by proceeding under Chevron to interpret § 252(e)(6) without regard for the fact that, in Starpower, the FCC was interpreting § 252(e)(5), a provision at issue neither in Core nor in this action. See 15 F.C.C.R. at 11278. That provision does not involve the exhaustion requirement that Sprint would have this Court creatively locate in Starpower. See id. at 11278. Moreover, to the extent that Starpower spoke to jurisdictional issues, it did so only as to the state commission's and the FCC's authority to

resolve post-formation disputes.  See id.  Federal judicial jurisdiction over such disputes, and any related requirement of exhaustion, were not touched by Starpower's holding or dicta.

In addition to Starpower, Sprint relies on two other cases which are inapposite to the exhaustion issue presented here. First, Sprint relies on the Fifth Circuit's decision in Sw. Bell, 208 F.3d 475, discussed in detail above.  See supra Section II.A.  Sw. Bell never considered whether a district court has jurisdiction in the first instance to decide post-formation disputes and, consequently, it gives no guidance on the exhaustion question Sprint asks this Court to decide.  In holding that federal courts have jurisdiction to review state commissions' determinations on post-formation ICA disputes, the Sw. Bell court merely expressed its belief that "the FCC plainly expects state commissions to decide intermediation and enforcement disputes that arise after the [ICA] approval procedures are complete."  208 F.3d at 480.

Significantly, the court did not say that the FCC expects state commissions to be more adept than federal courts at resolving post-formation ICA disputes or to exercise jurisdiction in these matters to the exclusion of federal courts.  Nor did the court say that the FCC expected that post-formation ICA disputes must be submitted to state commissions in the first instance.  Considering that, in Sw. Bell, the dispute

had been presented to, and decided by, a state commission, Sw. Bell is best considered as a holding that state commissions, when presented in the first instance with post-formation ICA disputes, are empowered to decide them.

Additionally, Sprint cites Rural Tel. Serv. Co., Inc. v. Alltel Commc'ns, Inc., 2008 WL 2169444 (D. Kan. May 23, 2008). There, a claim was brought to the district court seeking compensation under the terms of a stipulation to which the parties had agreed.[5] Rural Tel., 2008 WL 2169444, at * 1. The court held, without determining whether the stipulation should be considered an ICA, that the doctrine of exhaustion of remedies and/or primary jurisdiction warranted a stay. Id. at *4.

Wholly apart from the obvious point that Rural Tel. is not controlling here, Rural Tel. involved factual matters not present in this action. Whereas the parties in Rural Tel. had agreed to contractual language not previously approved by the relevant state commission, thus calling into question such language's status under the Act, it is clear in this action that the contested language is contained in previously approved ICAs. The relevant state commissions here, therefore, need not decide the preliminary issue that troubled the Rural Tel. court as

---

[5] The parties had not negotiated an ICA, nor had one been approved.

"properly . . . within the expertise of the [state commission]."
Id. at *5.

It is appropriate to be respectful of the cautious path chosen by the district court in Rural Tel., nothing in the Act supports applying that approach here or as a general rule. CenturyLink's claims are not so rife with administrative complexities that they belong initially in the ambit of state commissions alone. Indeed, the CenturyLink claims are relatively barren of such complexities.

Other than the citation to Starpower and Core and its progeny, which, in finding an exhaustion requirement, extended the Starpower decision beyond the confines of the FCC's actual (and narrow) holding, Sprint offers no other basis for a categorical exhaustion requirement. This is significant given the Act's utter silence on exhaustion as to post-formation ICA disputes. More telling, however, is that, when Congress' silence on post-formation disputes is coupled with its provision of an express exhaustion requirement for approval of ICAs, see 47 U.S.C. § 252(e)(1), it seems likely that, had Congress intended a strict exhaustion requirement for post-formation disputes, it would have done so expressly, in plain language.

Sprint further asserts that exhaustion is required because of the Dispute Resolution clause appearing in the ICAs. (Def. Reply at 9.) That clause states:

> The Parties recognize and agree that the
> Commission has continuing jurisdiction to
> implement and enforce all terms and
> conditions of this Agreement. Accordingly,
> the Parties agree that any dispute arising
> out of or relating to this Agreement that
> the Parties cannot resolve may be submitted
> to the Commission for resolution. . . . This
> provision shall not preclude the Parties
> from seeking relief available in any other
> forum.

(Va. ICA § 23.1) (emphasis added). At most, the Dispute Resolution clause creates co-extensive jurisdiction between the state commission and any other forum in which relief is available. It does not, as Sprint contends, require that the state commissions interpret and enforce the ICAs in the first instance.

Finally, "the uncertainty of [an] agency's authority to award relief counsels against requiring exhaustion." McCarthy, 503 U.S. at 155. CenturyLink correctly argues that the state commissions have no authority under the Act to award damages for breach of an ICA. With state commissions ill-equipped to address CenturyLink's contract claims, Sprint's proposed exhaustion requirement is, at best, inefficient, and, at worst, untenable.

In sum, a party to an ICA is not required to exhaust administrative remedies by bringing claims for breach of an ICA first to a state commission. This holding honors the statutory text and scheme as well as the rule of Chevron, and it is

consistent with the Court's obligation to exercise jurisdiction when it is found to exist.

For the foregoing reasons, Sprint's MOTION TO DISMISS (Docket No. 9) is denied, and CenturyLink's OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION (Docket No. 43) are sustained.

## IV. Primary Jurisdiction Doctrine

Sprint asserts that, if the Court does not dismiss CenturyLink's complaint for lack of jurisdiction or failure to exhaust administrative remedies, it should stay the case and refer it to the FCC under the primary jurisdiction doctrine. Though similar to the doctrine of exhaustion, the primary jurisdiction doctrine allows a court to refer to an agency a claim "properly cognizable in court" but containing an issue within the "special competence of an administrative agency." Reiter v. Cooper, 507 U.S. 258, 268 (1993). The purpose of the doctrine is "to coordinate administrative and judicial decision-making by taking advantage of agency expertise and referring issues of fact not within the conventional experience of judges or cases which require the exercise of administrative discretion." Envtl. Tech. Council v. South Carolina, 98 F.3d 774, 789 (4th Cir. 1996). No "fixed formula exists" for the application of the doctrine, but "[i]n every case the question

is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." Western Pac. R.R. Co., 352 U.S. at 64. Generally, four factors may be considered in deciding to stay the district court's jurisdiction in favor of the jurisdiction of an administrative agency:

(1) whether the question at issue is within the conventional experience of judges or it is within the agency's particular field of expertise;
(2) whether the question at issue is particularly within the agency's discretion;
(3) whether there exists a substantial danger of inconsistent rulings; and
(4) whether a prior application to the agency has been made.

AT & T Commc'ns of Va. v. Bell Atlantic-Virginia, Inc., 35 F. Supp.2d 493, 498 (E.D. Va. 1999) (citing Nat'l Commc'n Ass'n, Inc. v. Am. Tel. & Tel. Co., 46 F.3d 220, 222 (2d Cir. 1995)). The decision whether to refer an action to an agency is a discretionary matter. Envtl. Tech. Council, 98 F.3d at 789 n.24.

A. Conventional Experience of Judges

Sprint characterizes the "ultimate issue" in this action as "whether VoIP-originated traffic is subject to access charges." (Def. Mem. at 19.) That issue, says Sprint, is within the technical expertise of the FCC. Additionally, Sprint claims that the issue must be resolved by the FCC because it involves

32

interpretation of a tariff. See Union Tel. Co. v. Qwest Corp., 2004 WL 4960780, at *17 (D. Wyo. May 11, 2004) ("The interpretation of a tariff to determine its applicability to particular types of telecommunications traffic for purposes of recovering access charges involves expertise beyond the conventional experience of [a district court]."), aff'd, 495 F.3d 1187 (10th Cir. 1007).

Notwithstanding Sprint's protestations to the contrary, the central issue in this action involves interpretation of a contract, a task well within the conventional experience of judges. This reality remains unchanged despite the fact that the contract at issue happens to be an ICA. See Global NAPS N.C., Inc. v. BellSouth Telecomms. Inc., 455 F. Supp.2d 447, 449 (E.D.N.C. 2006) ("The central issue in this case concerns billing under the interconnection agreements between Global and BellSouth. Contract disputes are certainly within the conventional experience of judges."); Verizon New York, Inc. v. Global NAPS, Inc., 463 F. Supp.2d 330, 342 (E.D.N.Y. 2006) ("Ultimately, Verizon is correct: at its essence the dispute is a billing dispute. There is no reason to wait for Godot or the adoption of a regulatory scheme for VoIP traffic by the FCC. The determination of disputed contractual obligations is well within the conventional experience of the district court.").

B.    **Whether the Question is Within the FCC's Discretion**

Sprint next argues that the question at issue is within the FCC's discretion because the FCC has assumed jurisdiction over novel questions related to VoIP.    (Def. Mem. at 21.)    Sprint cites, for example, Clark v. Time Warner Cable, 523 F.3d 1110 (9th Cir. 2008), in which the Ninth Circuit upheld the district court's referral of a VoIP classification question to the FCC under the doctrine of primary jurisdiction.    523 F.3d at 1116. In Clark, the district court confronted a novel question of statutory interpretation regarding a VoIP classification.    Id. at 1113.    Additionally, before the filing of that action, the FCC had already issued a Notice of Proposed Rulemaking seeking comment pertinent to the action.    Id. at 1113-14.    Thus, Clark is  distinct  from  the  issue  here,  which  only  requires interpretation of a contract related to the use of VoIP, and not the statutory scheme.

Sprint  also  maintains  that  the  FCC  specifically  has asserted its authority over VoIP-related compensation issues. That is only partially correct.    In 2004, the FCC issued a Notice of Proposed Rulemaking in which it sought comment on the extent to which access charges should apply to VoIP services. In the Matter of IP-Enabled Servs., WC Docket No. 04-36, Notice of  Proposed  Rulemaking,  19  C.F.F.R.  4863,  ¶  61  (2004). Thereafter, the FCC issued a decision on a very limited issue:

charges for so-called "VoIP in the middle" cases. However, the FCC thereafter never issued regulations addressed to the contract dispute in this case.[6]

What Sprint fails to realize is that the FCC's unexercised role in regulating the VoIP-originated traffic has no bearing on the matter at hand—the meaning of the parties' contract as it relates to VoIP-originated traffic. To reiterate, this proceeding calls upon the Court to interpret the language in a contract and apply existing FCC tariffs to make a determination on compensation due under the pertinent ICAs. The FCC's role in regulating the industry does not change the fact, however, that the precise question presented here is the meaning of the parties' contract as it relates to VoIP-originated traffic. This is unaffected by the FCC's role in regulating the industry as a whole because the Court need only look to the language of the contract and the already-controlling regulations to make a determination about compensation due under the ICAs. To the extent that future FCC regulations might affect the ICAs, the ICAs contain a change of law provision that allows the parties to renegotiate the affected provisions in good faith. See Va. ICA § 4.2.

---

[6]   Ironically, one reason that Sprint advances in defense of its change of position on payment that prompted CenturyLink to file this action is that the FCC has not exercised any authority over the kind of VoIP traffic here at issue.

This action is, at its core, a contract dispute. Resolution of this dispute necessitates neither establishing future telecommunications policy nor assessing existing policy; resolution of this dispute necessitates only exacting scrutiny of the contract language at issue in the ICAs. CenturyLink's claims are thus not within the special discretion or expertise of the FCC.

## C. Danger of Inconsistent Rulings

Sprint argues that there is a danger of inconsistent rulings if the courts "were to involve themselves in the very issue currently under consideration by the FCC." (Def. Mem. at 28.) Sprint thus instructs the Court to defer to the FCC so that a consistent and comprehensive compensation regime can be established.

CenturyLink counters that the risk of inconsistent rulings is greater should the Court defer to the state commissions. (Pl. Response at 29.) In that scenario, argues CenturyLink, each of the eighteen identical or nearly identical ICA provisions regarding VoIP traffic could be interpreted differently by eighteen different state commissions. Accordingly, CenturyLink concludes that resolution in a single forum—this Court—would better avoid inconsistent rulings. And, CenturyLink is correct.

### D.    Prior Application to the Agency

Sprint insists that the FCC has a number of "applications and proceedings" under consideration bearing on the questions raised in this proceeding.    (Def. Mem. at 29.)    Curiously, though, none of the pending matters, which Sprint highlights as "fundamental" to the action at bar, were brought by Sprint itself.    The fourth prong of the four-factor test outlined above contemplates that a party to the present suit made prior application to the FCC.    See, e.g., Global NAPS, 455 F. Supp.2d at 449 (noting that neither party to the litigation had made application to the FCC such that the fourth prong did not counsel for referral to the FCC).

### E.    Balance of Factors

The Court recognizes that arguments can be fashioned both for and against retaining jurisdiction in the present action. Ultimately, however, the balance of the arguments counsels for retention.

While this action implicates some regulatory issues that have not yet been fully resolved, this action distilled to its essence, is a billing dispute dependent on interpretation of contracts that incidentally are ICAs.    As noted, courts are well-suited to engage in contract interpretation.    Furthermore, the Court, unlike the FCC or state commissions, has the power to award damages for breach of contract.    Finally, the danger of

inconsistent rulings is reduced by keeping these eighteen ICAs in one forum for resolution. The balance of all factors counsel against the entry of a stay.

## V. Motion to Supplement

The Magistrate recommended that CenturyLink's motion for leave to file a supplemental appendix to its opposition to Sprint's motion to dismiss or stay should be denied. The Magistrate made this recommendation because the motion to supplement did not need to be addressed once the motion to dismiss was granted. Because this Court now holds that dismissal is not required for failure to exhaust administrative remedies or for lack of subject matter jurisdiction, CenturyLink's motion merits consideration.

In its motion, CenturyLink seeks to add three documents to the appendix to its opposition to Sprint's motion to dismiss. Those documents became matters of public record on January 6 and 7, 2010, shortly before CenturyLink filed its opposition. According to CenturyLink, the documents evidence Sprint advancing positions on VoIP compensation to various state commissions contrary to the position that Sprint advances in the present action. Sprint, in response, contends that the documents that CenturyLink seeks to add are irrelevant to this litigation.

Upon review, two of the proposed supplemental documents, Tabs K and L, are more relevant to the merits of the contract dispute than to the merits of the motion to dismiss or stay. The final document, Tab M, merely contains a statement made by Sprint's opposing party in another matter. This document does not show any inconsistencies on Sprint's part that warrant estoppel. CenturyLink's motion to supplement therefore is denied.

CONCLUSION

For the reasons set forth above, CENTURYLINK'S OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION (Docket No. 43) are sustained and the DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION AND FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES, OR, ALTERNATIVELY, TO STAY THIS CASE UNDER THE DOCTRINE OF PRIMARY JURISDICTION (Docket No. 9) is denied; and the MOTION FOR LEAVE TO SUPPLEMENT THE APPENDIX TO CENTURYLINK'S OPPOSITION TO SPRINT'S MOTION TO DISMISS OR STAY (Docket No. 20) is denied.

It is so ORDERED.

/s/ _REP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: January 3, 2011