

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CENTRAL TELEPHONE CO.
OF VIRGINIA, et al.,

    Plaintiffs,

v.                            Civil Action No. 3:09cv720

SPRINT COMMUNICATIONS CO.
OF VIRGINIA, INC., et al.,

    Defendants.

## MEMORANDUM OPINION

For the reasons set forth below, the Court will order the Defendants (collectively, "Sprint") to pay the Plaintiffs (collectively, "CenturyLink") prejudgment interest in the amount of $2,979,487, which reflects a prejudgment interest rate of 12% per annum applied to past due amounts through February 28, 2011. For reasons separately set forth below, the Court will not order Sprint to pay CenturyLink's attorneys' fees in this action.

## BACKGROUND

On March 2, 2011, the Court entered a MEMORANDUM OPINION (Docket No. 180) holding that Sprint was liable in damages for breaching its contract with CenturyLink and stating its intention to enter judgment for CenturyLink on its breach of contract claim against Sprint in an amount to be set by

subsequent order of the Court. Among the damages issues not resolved when the Court issued the MEMORANDUM OPINION (Docket No. 180) were: (1) the amount of prejudgment interest to which CenturyLink would be entitled (and, as a predicate, what prejudgment interest rate, or rates, would apply to CenturyLink's breach of contract claim); and (2) whether CenturyLink would be entitled to reasonable attorneys' fees, to be paid by Sprint. On February 18, 2010, in contemplation of the then-forthcoming MEMORANDUM OPINION (Docket No. 180), the Court directed the parties to brief the issues of prejudgment interest and attorneys' fees. (See Docket No. 173.) Those issues have now been fully briefed and are ready for decision.

## DISCUSSION

1. **Prejudgment Interest**

    A. **Position of the Parties**

CenturyLink argues that, at minimum, it is entitled to prejudgment interest[1] in the amount of $2,979,487, which reflects the past due amounts for all accounts through February 28, 2011, as calculated by CenturyLink, multiplied by 12% per annum (equivalent to a .000329 rate of interest compounded daily). But the more appropriate prejudgment interest amount, according to CenturyLink, is $3,611,625. The greater amount reflects the

---

[1] The parties use the term "prejudgment interest" as a proxy for "late fees." And, the Court will thus treat them as one and the same.

2

past due amounts delivered over local interconnection trunks multiplied by a 12% per annum rate and past due amounts delivered over long distance interconnection trunks multiplied by an 18% per annum rate (equivalent to .000590 rate of interest compounded daily). CenturyLink argues that this blended-rate methodology of calculating prejudgment interest is preferable because, while the Virginia ICA provides for a 12% per annum prejudgment interest rate, CenturyLink's interstate and intrastate access tariffs provide for a higher 18% per annum rate in some instances. (See CENTURYLINK'S REPLY MEMORANDUM IN SUPPORT OF POST-TRIAL REQUEST FOR PREJUDGMENT INTEREST (Docket No. 178) at 4-5.)

Sprint does not dispute the 12% annual rate of prejudgment interest offered by CenturyLink as one possibility. That rate, notes Sprint, is specified in Section 7.4 of the Virginia ICA (which, by stipulation of the parties, is materially identical to the prejudgment interest provisions in all the other ICAs implicated by CenturyLink's contract claim). Section 7.4 reads:

> Parties will assess late payment charges to the other party until the amount due is paid in full. Such late payment charges will be calculated using a rate equal to the lesser of
>
> > 7.4.1. the total amount due times the highest rate (in decimal value) which may be levied under law for commercial transactions, compounded daily for the number of days from the payment date to

3

> and including the date the billed party actually makes payment to the billing party or
>
> 7.4.2. the total amount due multiplied by a factor of 0.000329 [the equivalent of 12% per annum] times the number of days which occurred between the payment due date and (including) the date billed party actually makes the payment to the billing party.

(Ex. 25 § 7.4.) Sprint, however, does dispute what, in its eyes, is selective application of an 18% annual rate of prejudgment interest to certain categories of traffic. If prejudgment interest is to be had on the total disputed amount, as calculated by CenturyLink, Sprint contends that it should be $2,979,487 and no more. For Sprint, CenturyLink's $3,611,625, blended-rate prejudgment interest amount is not permissible under the terms of Section 7.4 of the Virginia ICA. (See SPRINT'S POST-TRIAL RESPONSE MEMORANDUM ADDRESSING CENTURYLINK'S REQUEST FOR PREJUDGMENT INTEREST (Docket No. 176) at 5.)

Although Sprint consents to application of a 12% annual rate of prejudgment interest, it does not consent to application of that rate to the total past due amounts claimed by CenturyLink. That is because, according to Sprint, a "significant portion of the dollars" in CenturyLink's past due amounts was timely disputed (see Ex. 133) before the billing date under Section 7.3 of the Virginia ICA, and thus should be removed from the past due amounts against which the prejudgment

4

interest rate of 12% per annum is to be applied.  (Id. at 3.)
Section 7.3 provides:

> Billed amounts for which written, itemized disputes or claims have been filed are not due for payment until such disputes or claims have been resolved in accordance with the provisions governing dispute resolution of this Agreement.  Itemized, written disputes must be filed with Sprint's National Exchange Access Center . . . , National Access Service Center . . . , or appropriate equivalent center no later than the due date of the related invoice.  A copy of the dispute must be sent with the remittance of the remainder of the invoice.

Ex. 25 § 7.3.  Section 7.3 operates in conjunction with Section 7.4, which provides that late payment charges may only be assessed on amounts that are "due."  Id. § 7.4.

B.  **Appropriate Amount of Prejudgment Interest**

The appropriate amount of prejudgment interest is $2,979,487.  The decision in United States v. Dollar Rent A Car Systems, 712 F.2d 938 (4th Cir. 1983), provides the applicable rule on prejudgment interest in actions such as this one, where the Court's jurisdiction is premised on federal question jurisdiction.  Dollar Rent A Car Systems says that, where jurisdiction is not based on the diversity of litigants, "the district court . . . is not bound by the interest rate of the forum state in determining the rate of prejudgment interest, but must use its discretion in setting the proper rate."  712 F.2d at 941.  Here, the appropriate annual rate of prejudgment

5

interest is the 12% rate clearly stated in the Virginia ICA. First, although <u>Rent A Car Systems</u> makes clear that the Court need not apply Virginia law on prejudgment interest, nothing in this action makes application of Virginia law inappropriate. Indeed, the fact that the parties agreed to have Virginia law serve as a proxy for all other states' laws implicated by this action makes application of Virginia's law on prejudgment interest most appropriate. Virginia's prejudgment interest statute, Va. Code § 6.2-302 (effective October 1, 2010), provides that "the judgment rate of interest shall be an annual rate of six percent, except that a money judgment entered in an action arising from a contract shall carry interest at the rate lawfully charged on such contract, or at six percent annually, whichever is higher." The Court will enter a "money judgment" for breach of the Virginia ICA, and thus, pursuant to Va. Code § 6.2-302, the annual rate of prejudgment interest should be that set forth in the Virginia ICA, 12% per annum (which is lawfully permitted and greater than the base 6% per annum rate provided for in Va. Code § 6.2-302).

Second, the record does not establish as valid the blended-rate methodology that CenturyLink would have the Court use to calculate the amount of prejudgment interest due—much less establish it as <u>more appropriate</u> than the annual 12% rate stated in Section 7.4 of the Virginia ICA. The prejudgment interest

6

provision in the Virginia ICA sets a 12% per annum rate without equivocation or qualification. It does not support use of CenturyLink's blended-rate methodology. The contract between the parties clearly supports but one prejudgment interest rate in this action: 12% per annum.

Sprint's argument attacking as too large the total past due amount against which CenturyLink applied its prejudgment interest rates lacks merit. Ms. Roach (the Sprint witness who was in charge of the dispute) herself admitted in her testimony that Sprint did not comply with Section 7.3's requirement that Sprint remit the remainder of the invoice to CenturyLink. (See Trial Tr. 647:4-5 (Roach) ("We have not re[]mitted payments to CenturyLink, that's correct.").) Sprint's argument fails on Ms. Roach's admission alone. Sprint's argument fails for the additional reason that Sprint withheld the entire amount on certain invoices, including portions that were not in dispute. (Id. 95:11-97:5 (Cheek).) Sprint did this as a means of recouping amounts previously paid on invoices from prior months and years that it had not timely disputed under the Virginia ICA. Thus, far from remitting the remainder of the invoice, as called for by Section 7.3, Sprint unilaterally withheld that amount in a manner sanctioned neither by Section 7.3 nor by any other section of the Virginia ICA.

Sprint does not dispute the "Total Past Due Open Balance,"

7

as calculated by CenturyLink and specified in Exhibit A of CENTURYLINK'S POST-TRIAL MEMORANDUM REQUESTING PREJUDGMENT INTEREST AT RATES SPECIFIED IN FCC TARIFF NO. 1 AND AGREED UPON IN ICAS (Docket No. 174); it only disputes applying the 12% annual rate of prejudgment interest to the entirety of that amount. For the reasons stated in the preceding paragraph, it is appropriate to apply the 12% annual rate of interest to that entire amount. Hence, the appropriate amount of prejudgment interest is $2,979,487—the amount that both parties agree represents the "Total Past Due Open Balance" multiplied by 12% per annum through February 28, 2011.[2] (See SPRINT'S POST-TRIAL RESPONSE MEMORANDUM ADDRESSING CENTURYLINK'S REQUEST FOR PREJUDGMENT INTEREST (Docket No. 176) at 5; MEMORANDUM IN SUPPORT OF SPRINT'S MOTION TO STRIKE THE AFFIDAVIT OF GINA L. JACKSON (Docket No. 182) at 1.)

2. Attorneys' Fees

    A. Position of the Parties

    CenturyLink claims that it is entitled to attorneys' fees

---

[2] The Court will deny as moot SPRINT'S MOTION TO STRIKE THE AFFIDAVIT OF GINA L. JACKSON (Docket No. 181). In its MEMORANDUM IN SUPPORT OF SPRINT'S MOTION TO STRIKE THE AFFIDAVIT OF GINA L. JACKSON (Docket No. 182), Sprint agrees that $2,979,487 is the correct amount of prejudgment interest owed through February 28, 2011, if, as the Court has found, the 12% annual rate of prejudgment interest specified in the Virginia ICA should be applied to CenturyLink's "Total Past Due Open Balance." Because Sprint agrees with this figure and the Court has deemed this figure appropriate, Ms. Jackson's affidavit is immaterial, notwithstanding its admissibility.

8

under both the Telecommunications Act and its tariffs. As to the Act, it claims attorneys' fees under 47 U.S.C. § 206:

> In case any carrier shall do, or cause to permit to be done, any act, matters, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing, in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case or recovery, which attorney's fees shall be taxed and collected as part of the costs in the case.

CenturyLink contends that Sprint breached nineteen ICAs, each of which were approved by state commissions pursuant to the Telecommunications Act. CenturyLink then quotes the United States Court of Appeals for the Fourth Circuit in <u>Verizon Md., Inc. v. Global NAPS, Inc.</u>, 377 F.3d 355 (4th Cir. 2004): "Once the [ICA] is approved, the 1996 Act requires the parties to abide by its terms." 377 F.3d at 364. Thus, concludes CenturyLink, "when Sprint breached the ICAs, it failed to discharge a duty required by the 1996 Act," namely Section 251, which "entitles Sprint to interconnection and obligated Sprint to comply with the provisions of [ICAs] established pursuant to Section 252." (CENTURYLINK'S POST-TRIAL MEMORANDUM REQUESTING ATTORNEY'S FEES (Docket No. 175) at 2.)

Additionally, CenturyLink claims a right to attorney's fees

9

under its interstate and intrastate tariffs. CenturyLink offers Sections 2.3.8(C) and 2.1.3(E) of its interstate tariffs, which, it claims, are reproduced in identical or nearly identical terms in all but one of its intrastate tariffs. Section 2.3.8(C) provides:

> The customers [Sprint] shall defend, indemnify and save harmless the Telephone Company [CenturyLink] from and against any suits, claims, losses or damages, including punitive damages, attorney's fees and court costs by the customer or third parties arising out of any act or omission of the customer in the course of using services provided under this tariff.

Section 2.1.3(E) provides:

> The Telephone Company [CenturyLink] shall be indemnified, defended and held harmless by the IC or End User [Sprint] against any claim, loss or damage arising from the use of services offered under this tariff. This obligation to indemnify, defend and hold harmless shall attach to the IC or the End User separately, and each shall be responsible for its own acts and omissions, including:
>
> . . .
>
> (3) All other claims arising out of any act or omission of the End User or IC in the course of using services provided pursuant to this tariff.

Sprint contends that CenturyLink is not entitled to attorneys' fees under either the Telecommunications Act or CenturyLink's tariffs. According to Sprint, CenturyLink is not due attorneys' fees under the Telecommunications Act because it

10

pled breach of contract, not a violation of federal law. Sprint cites an FCC order rejecting the proposition that a customer's failure to pay access charges equates to a violation of the Telecommunications Act.[3] (See SPRINT'S POST-TRIAL RESPONSE MEMORANDUM ADDRESSING CENTURYLINK'S REQUEST FOR ATTORNEY'S FEES (Docket No. 177) at 3.)

Sprint opposes CenturyLink's claim to attorneys' fees under the tariffs on multiple grounds. First, Sprint argues that CenturyLink waived its tariff-based argument when it failed to cite the tariffs as a basis for attorneys' fees in the COMPLAINT (Docket No. 1) (requesting "attorneys' fees pursuant to 47 U.S.C. § 206 and the Sprint ICAs) and CENTURYLINK'S PROPOSED FINAL JUDGMENT INCLUDING FINDINGS OF FACT AND CONCLUSIONS OF LAW (Docket No. 107) and CENTURYLINK'S FINAL JUDGMENT INCLUDING FINDINGS OF FACT AND CONCLUSIONS OF LAW (Docket No. 146) (making no reference to tariffs as bases for attorneys' fees). Second, Sprint contends that the ICAs did not incorporate the tariff sections quoted above, upon which CenturyLink relies for attorneys' fees. Third, Sprint maintains that the wording of those sections does not support, much less even speak to,

---

[3] See In the Matter of All Am. Tel. Co., 52 Commc'ns Reg. (P&F) 233 (F.C.C.) ¶ 10, 2011 WL 194539 (Jan. 20, 2011) ("During the last twenty years, the Commission has repeatedly held that an allegation by a carrier that a customer has failed to pay charges specified in the carrier's tariff fails to state a claim for violation of any provision of the Act . . . , even if the carrier's customer is another carrier.").

attorneys' fees in first-party litigation settings like the one here. Sprint characterizes Sections 2.3.8(C) and 2.1.3(E) as indemnification provisions, which necessarily contemplate the presence of third-party litigation, or at least a scenario where CenturyLink is the party being sued. At best, Sprint argues, these provisions are ambiguous on the availability of attorneys' fees, and absent a contractual provision that manifestly provides for fee-shifting, Sprint continues, the "American rule" that each party pays its own attorneys' fees should prevail. See SPRINT'S POST-TRIAL MEMORANDUM ADDRESSING CENTURYLINK'S REQUEST FOR ATTORNEY'S FEES (Docket No. 177) at 6-8.)

### B. Availability of Attorneys' Fees

CenturyLink is not entitled to attorneys' fees in this action. 47 U.S.C. § 206 of the Telecommunications Act does not require the Court to award CenturyLink attorneys' fees because, in holding in the MEMORANDUM OPINION (Docket No. 180) that Sprint breached nineteen ICAs when it refused to pay access charges on VoIP traffic according to the jurisdictional endpoints of calls, the Court held that Sprint breached provisions (see Ex. 25 § 38.4) in certain federally-recognized contracts, not that Sprint violated the Telecommunications Act itself. CenturyLink's reliance on Verizon Md., Inc. v. Global NAPS, Inc. is misplaced. In that case, the Fourth Circuit noted that ICAs are "vehicles" of the Telecommunications Act, and thus

federal law, but it did this in the context of determining whether a party's challenge to a state commission's interpretation of an ICA arose under federal law such that a district court could exercise jurisdiction over that challenge. See Verizon Md., 377 F.3d at 364, 366. The rationale of Verizon Md is inapposite to the issue of the availability of attorneys' fees under 47 U.S.C. § 206 for the reason that exercising jurisdiction over contracts, like ICAs, that are creatures of federal law is a markedly different issue than awarding attorneys' fees for breaches of those same contracts. Simply put, CenturyLink did not plead a violation of the Telecommunications Act and the Court did not find a violation of the Telecommunications Act, and therefore CenturyLink is not entitled to attorneys' fees under 47 U.S.C. § 206.[4]

CenturyLink's argument for attorneys' fees under its tariffs is equally unavailing. First and foremost, CenturyLink did not make clear its intention to claim attorneys' fees under either its interstate or intrastate tariffs in any of its pre-trial pleadings or post-trial proposed findings of fact and conclusions of law. It therefore is not appropriate for the Court to consider Sections 2.3.8(C) and 2.1.3(E) as bases for attorneys' fees as a matter of procedure. Aguilar v. Arthritis

---

[4] The FCC's decision in In the Matter of All Am. Tel. Co. (see n.3, supra) confirms this analysis.

Osteoporosis Center, No. M-03-243, 2006 WL 2478476, at *5 n.8 (S.D. Tex. Aug. 25, 2006) ("Arguments raised for first time in post-trial briefing are waived." (citing Weiner v. United States, 255 F. Supp.2d 663, 668 (S.D. Tex. 2002))). But even if it were appropriate, neither of those sections bestows on Centurylink a right to attorneys' fees in this action.

The Fourth Circuit has made clear that courts should not lightly depart from the American Rule "which requires each party to bear its own litigation costs, including attorney's fees." United Food and Commercial Workers v. Marval Poultry Co., 876 F.2d 346, 350 (4th Cir. 1989). As a matter of course, courts do not award prevailing parties attorneys' fees unless there is "express contractual or statutory authorization." See id. "Contractual stipulations for attorneys' fees are generally strictly construed." Triton Marine Fuels, Ltd. v. M/V Pac. Chuckotka, 671 F. Supp.2d 753, 763 (D. Md. 2009) (citing U.S. Fidelity and Guar. Co. v. Braspetro Oil Serv. Co., 369 F.3d 34, 75 (2d Cir. 2004)). In interpreting New York law, the Second Circuit has gone so far as to say that a "court should not infer a party's intention to waive the benefit of the American Rule unless the intention to do so is <u>unmistakably clear</u> from the language of the promise." U.S. Fidelity, 369 F.3d at 75 (internal quotation marks omitted and emphasis in original).

Section 2.1.3(E) of CenturyLink's interstate tariffs cannot

14

be said to provide "express contractual authorization" for an award of attorneys' fees, since the phrase "attorneys' fees" nowhere appears in that provision. Section 2.3.8(C) refers to "attorneys' fees" expressly, but its operative language—"indemnify and save harmless"—clearly evidences that it is an indemnification provision, not a manifestation of intent by Sprint to abandon the American Rule and pay CenturyLink's attorneys' fees in first-party lawsuits such as this one. CenturyLink's tariffs do not support an award of attorneys' fees.[5]

## CONCLUSION

For the reasons set forth above, the Court will order Sprint to pay the CenturyLink's prejudgment interest in the amount of $2,979,487, and the Court will not order Sprint to pay CenturyLink's attorneys' fees.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 30, 2011

---

[5] Having rejected an award of attorneys' fees under CenturyLink's tariffs for the reasons stated herein, the Court need not consider Sprint's other arguments rejecting attorneys' fees.

15